[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14490

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

THELRON DEBRAY COLEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:94-cr-00004-HL-CHW-1

_____

Before NEWSOM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Thelron Debray Coleman, a federal prisoner serving a life sentence for possessing a firearm as a felon, appeals the denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  On appeal, Coleman argues that the district court abused its discretion and erred by denying his motion because (1) he had ongoing medical conditions that produced complications in conjunction with the COVID-19 pandemic; (2) his sentence produced an unwarranted sentencing disparity; (3) the district court did not sufficiently analyze whether he was a danger to the community; and (4) the district court was unclear as to whether it was foreclosing all forms of relief or just foreclosing his request for home confinement.  After careful review, we affirm the district court's denial of Coleman's motion for compassionate release.

## I.    FACTS

We recount the facts underlying Coleman's sentence and his request for compassionate release.

## A.    Life Imprisonment Sentence

In February 1993, Coleman escaped from state custody while serving a 20-year sentence for armed robbery, obstruction of a police officer, and possession of a firearm by a convicted felon. During his escape, Coleman stole a car that contained a firearm.

The police engaged in a high-speed chase but later ceased pursuit when it became too dangerous. Coleman eventually abandoned the initial car and stole a second car. The next day, the police located Coleman and arrested him without incident.

In January 1994, a federal grand jury charged Coleman with one count of possession of a firearm by a convicted felon. Later, a superseding indictment added two counts of carjacking and two counts of using a firearm during a carjacking.

Meanwhile, in May 1994, Coleman escaped from federal custody. Coleman initially stole five cars: (1) a truck near the jail; (2) a car from an elderly woman at a gas station; (3) a car from a high school student; and (4) two cars from men who said Coleman brandished a gun to further the thefts. At first, Coleman denied having a gun but later admitted to using one. The police found and pursued Coleman, causing him to wreck the fifth car. The police continued pursuit on foot. One officer fired his weapon at Coleman but missed. Coleman got away and stole a sixth car. Eventually, the police apprehended him in Tennessee, and he was returned to federal custody.

In June 1994, Coleman escaped again. This time, Coleman stole a truck. Two days later, the police located him. Coleman led the police on a high-speed chase before wrecking the vehicle and attempting to flee on foot. Eventually, the police apprehended Coleman and returned him to federal custody once again.

In April 1995, Coleman pleaded guilty to the first count in exchange for dismissal of the remaining four counts. Coleman's initial advisory guidelines range was 235 to 293 months' imprisonment.

Based on the events surrounding Coleman's escapes, the government asked for an upward departure. The district court granted that request. Coleman's new advisory guidelines range was 360 months to life imprisonment. In August 1995, the district court sentenced Coleman to life imprisonment without parole.

In March 1997, this Court affirmed Coleman's conviction and sentence. *See United States v. Coleman*, 111 F.3d 896 (11th Cir. 1997) (unpublished table decision). Coleman's post-conviction motions to vacate his sentence were unsuccessful.

## B.   Motion for Compassionate Release

In April 2020, Coleman, proceeding *pro se*, moved for compassionate release. The district court appointed him counsel.

In March 2021, with the assistance of counsel, Coleman filed a memorandum in support of his motion for compassionate release. Coleman argued that his underlying medical conditions—hypertension, hyperlipidemia, kidney disease, and pre-diabetes—substantially diminished his ability to provide self-care in prison.

Additionally, Coleman argued that (1) he was not a danger to the community and (2) the § 3553(a) factors supported a sentence reduction. Specifically, Coleman claimed he was not a danger because he had not harmed anyone and had rehabilitated

himself in prison.  He also claimed that his sentence was "vastly disproportionate to a typical sentence" for felon in possession of a firearm.

In response, the government opposed the motion.  First, the government conceded that Coleman had shown an extraordinary and compelling reason to justify compassionate release. Specifically, the government acknowledged that Coleman's chronic kidney disease placed him at an increased risk of severe illness from COVID-19 and that "Coleman's ability to provide self-care against serious injury or death as a result of COVID-19 [was] substantially diminished, within the environment of a correctional facility, by the chronic condition itself."

However, the government urged the district court to deny Coleman's motion based on Coleman's danger to the community and the § 3553(a) factors.  The government contended that Coleman was a "clear danger to the community."    The government explained that Coleman's extensive criminal history "demonstrate[d] his lack of respect for the law and unwillingness or inability to be a law-abiding citizen." It further noted that imprisonment followed by parole or probation has not deterred Coleman's criminal behavior.    Instead, Coleman's criminal conduct only further escalated, with him committing new felonies and escaping custody three times.

As to the § 3553(a) factors, the government argued that the seriousness of the underlying crime and Coleman's criminal history do not support a sentence reduction.  The government

asked the district court to "respect the sentencing court's careful weighing of the § 3553(a) factors and preserve his sentence."

## C.    District Court's Order

In a December 2021 order, the district court denied Coleman's motion for compassionate release. The district court explained that in reaching its decision, it had considered: (1) Coleman's medical records from the Bureau of Prisons; (2) the information contained in the parties' submissions; and (3) the applicable factors in 18 U.S.C. § 3553(a)—specifically the nature and circumstances of the offense and the need to avoid an unwarranted sentencing disparity.

The district court found that the medical records from the Bureau of Prisons confirmed: (1) Coleman was actively receiving medical treatment for his four medical conditions and that treatment was controlling his medical issues; and (2) Coleman was able to perform daily tasks of self-care, such as caring for personal hygiene and taking medication without assistance. The district court also noted that in March 2021 Coleman (1) contracted COVID-19 and recovered and (2) refused the COVID-19 vaccine.

Further, the district court noted that (1) the instant offense happened while Coleman had escaped custody and involved an additional offense of carjacking and (2) Coleman continued his criminal behavior by escaping custody several more times and committing violent crimes, such as carjackings.

The district court concluded that Coleman "ha[d] not provided 'extraordinary and compelling' reasons to warrant the [c]ourt ordering a compassionate release in this case." Alternatively, the district court "note[d] for the record that [Coleman was] a danger to the community" and thus it "would not order [Coleman's] release even if 'extraordinary and compelling' reasons for grant[ing] a compassionate release were identified."

Coleman appeals the district court's denial of his motion for compassionate release.

## II.    STANDARD OF REVIEW

We review an order denying compassionate release for abuse of discretion. *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Id.* It also abuses its discretion by "commit[ting] a clear error of judgment." *Id.* at 912.

## III.    DISCUSSION

### A.    General Principles

A district court has no inherent authority to modify a defendant's sentence but may do so to the extent permitted by statute or rule. *United States v. Puentes*, 803 F.3d 597, 605–06 (11th Cir. 2015). Section 3582(c)(1)(A) authorizes a district court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a)" if it finds that (1) "extraordinary and

compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).[1]

The applicable policy statement for § 3582(c)(1)(A) is found in § 1B1.13 of the Sentencing Guidelines. *See* U.S.S.G. § 1B1.13. Specifically, § 1B1.13 notes that a district court may reduce a sentence if, after considering any applicable § 3553(a) factors, the district court determines that three elements are met: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the safety of others or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with the policy statement within § 1B1.13. *Id.*

As to the first element, this Court concluded that a district court may not reduce a sentence unless a reduction would be consistent with § 1B1.13's definition of extraordinary and compelling reasons. *See United States v. Bryant*, 996 F.3d 1243, 1252–62 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 583 (2021). The application notes to § 1B1.13 list these four categories of "extraordinary and compelling reasons": (A) the defendant's medical condition, (B) his age, (C) his family circumstances, and (D) "Other Reasons." U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

---

[1] The statute also authorizes an age-based sentence reduction, which is not at issue here. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

### B.    Analysis

The district court denied Coleman's motion for compassionate release for two reasons: (1) Coleman had failed to show "extraordinary and compelling reasons" for his release; and (2) alternatively, Coleman was a danger to the community. We affirm both findings.

As to the first reason, Coleman argued that his diagnosed medical conditions, coupled with the COVID-19 pandemic, qualified as an extraordinary and compelling reason to grant him compassionate release. For a defendant's medical condition to constitute an extraordinary and compelling reason, the defendant must be currently suffering from either (i) a terminal illness or (ii) a serious condition or impairment that substantially diminishes his ability to provide self-care in prison and from which he is not expected to recover. U.S.S.G. § 1B1.13 cmt. n.1(A).

Coleman did not contend that he had a medical condition that was terminal. Instead, he argued that because of his medical conditions, he was at a higher risk of more serious complications, including death, if he were to contract COVID-19.

But as the district court noted, in March 2021 Coleman (1) contracted COVID-19 and recovered and (2) refused the COVID-19 vaccine. The district court further found Coleman was able to perform daily tasks of self-care, such as caring for personal hygiene and taking medication without assistance. In addition, the district court reviewed Coleman's medical records from the

Bureau of Prisons and said those records confirmed Coleman was actively receiving medical treatment that was controlling his conditions.  In sum, Coleman failed to demonstrate that the district court abused its discretion in concluding that he failed to show his medical conditions qualified as an extraordinary and compelling reason.  *See, e.g.*, *United States v. Giron*, 15 F.4th 1343, 1346–47 (11th Cir. 2021) (upholding the denial of compassionate release where the movant suffered from high cholesterol, high blood pressure, and coronary artery disease because those conditions were manageable in prison and did not meet the categories in U.S.S.G. § 1B1.13's application note 1(A)).

To the extent Coleman argued that a potential future contraction of COVID-19 alone is an extraordinary and compelling reason, that argument lacks merit.  Such an argument, at best, falls within subsection (D)—the "catch all" provision of § 1B1.13's definition of "extraordinary and compelling reasons."  Subsection (D) provides that a prisoner may be eligible for relief if, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subsections (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D) (emphasis added).  In *Bryant*, this Court concluded that this "catch all" provision does not grant to district courts the discretion to develop other reasons outside those listed in § 1B1.13 that might justify a reduction in a defendant's sentence.  996 F.3d at 1248, 1263, 1265.  Instead, those

"other reasons" must be determined by the Director of the Bureau of Prisons. *Id.* at 1264–65.

That Coleman has not shown an extraordinary and compelling reason is enough, in and of itself, to foreclose a sentence reduction under § 3582(c)(1)(A). *See United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021) (explaining that an "extraordinary and compelling" circumstance is a necessary condition for a sentence reduction under § 3582(c)(1)(A)).

Nonetheless, we discuss the district court's alternative finding as well. As noted above, § 1B1.13 requires that the district court determine that the defendant is not a danger to the safety of others or to the community, as provided in 18 U.S.C. § 3142(g),[2] for it to grant a motion for compassionate release. U.S.S.G. § 1B1.13(2).

We conclude the district court did not abuse its discretion in finding that Coleman is a danger to the safety of the community.

---

[2] Section 3142(g) lists several factors for the district court to consider in determining whether a defendant is a danger to another person or the community, including (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including their criminal history and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4).

The district court stressed Coleman's firearm offense had occurred while he "was in escape status" and involved a carjacking.  The district court also cited Coleman's history of escapes and violent criminal behavior, including multiple carjackings.

Coleman contends the district court failed to consider the § 3142(g) factors or provide sufficient reasoning to allow for meaningful appellate review.  Although the district court did not explicitly reference § 3142(g), the district court clearly stated it had "carefully and completely reviewed and considered the information submitted in defense and government motions/responses."  In the government's response brief before the district court, the government set out the § 3142(g) factors and discussed in great detail how they demonstrated Coleman is a danger to the safety of others and the community.  Further, the district court referred to facts that implicated at least two of the § 3142(g) factors, including the nature and circumstances of Coleman's charged offense and his history and characteristics.  Therefore, contrary to Coleman's contention, the district court adequately explained its reasoning and considered § 3142(g) in reaching its conclusion about dangerousness.

## IV.    CONCLUSION

We affirm the district court's denial of Coleman's motion for compassionate release.

AFFIRMED.